IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 2:12-cr-0415-DCN-1 |
| vs. | ) | |
| | ) | **ORDER** |
| RAYNARD MONTEL EADY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      This matter is before the court on defendant Raynard Montel Eady's ("Eady") motion for compassionate release, ECF No. 357. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

      In 2012, a grand jury indicted Eady, along with two co-defendants, based on his participation in a string of robberies that took place between 2009 and 2011. The indictment included nine counts. ECF No. 3. Count 1 charged Eady with conspiracy to commit robbery affecting interstate commerce in violation of 18 U.S.C. § 1951(a). Counts 2, 4, 6, and 8 charged Eady with robbery affecting interstate commerce in violation of 18 U.S.C. § 1951(a) ("Hobbs Act Robbery"). Counts 3, 5, 7, and 9 charged Eady with possession of a firearm in furtherance of a crime of violence in violation of § 924(c). On March 7, 2013, Eady pleaded guilty to all nine counts pursuant to a written plea agreement. ECF No. 107. The Presentence Report, prepared by the United States Probation Office, recommended an imprisonment range under the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines") of 84–105 months for Counts 1, 2, 4, 6, and 8; a statutorily mandated minimum sentence of five years for Count 3; and statutorily mandated minimum sentences of 25 years each for Counts 5, 7, and 9.

1

All told, Eady's Sentencing Guideline range recommended a term of imprisonment of 1,044–1,065 months. On April 28, 2014, the government filed a motion for downward departure based on Eady's substantial assistance with the prosecution of his case. ECF No. 232. On May 6, 2014, the court granted the motion and sentenced Eady to a 300-month term of imprisonment, departing significantly from the Sentencing Guidelines recommendation pursuant to 18 U.S.C. § 3553(e). ECF No. 245.

On May 15, 2020, Eady, through counsel, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] On July 9, 2020, the government filed a motion to stay, ECF No. 363, which the court granted, staying this matter pending the Fourth Circuit's resolution of United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020). After the Fourth Circuit decided McCoy, the court lifted the stay and the parties filed supplemental briefs. ECF Nos. 369 and 370. On March 17, 2021, Eady filed additional documents in support of his request. ECF No. 371. Accordingly, Eady's motion is ripe for review.

## II.  STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule, permitting courts to "reduce [a] term of imprisonment" where "extraordinary and compelling reasons warrant such a reduction." Courts refer to

---

[1] Eady first requested relief under § 3582(c)(1)(A) in a reply in support of his then-pending motion to vacate under 28 U.S.C. § 2255. ECF No. 354 at 5. The court declined to consider Eady's request at that juncture based on his failure to exhaust his administrative remedies. ECF No. 355 at 10–11. There is no dispute that Eady has since exhausted his administrative remedies, such that the court can now entertain his request. See ECF No. 357-1.

requests under this section as motions for "compassionate relief." United States v. Norris, 2020 WL 2110640, at *1 (E.D.N.C. Apr. 30, 2020). Prior to the First Step Act, the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate relief. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate relief with the sentencing court after exhausting available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit recently clarified that district courts are empowered to "consider any extraordinary and compelling reason for release that a defendant might raise." McCoy, 981 F.3d at 284 (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). A compassionate relief defendant "has the burden of establishing that such relief is warranted." Griggs, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, that burden remains "exceptionally high." McCoy, 981 F.3d at 288.

### III.   DISCUSSION

Eady argues that two extraordinary and compelling circumstances justify a reduction in his sentence. First, Eady argues that the disparity between the Sentencing

3

Guidelines range under which he was sentenced and the Sentencing Guidelines range he would receive today constitutes an extraordinary and compelling circumstance justifying his immediate release. Similarly, Easy alternatively argues that the disparity between his sentence and those of his co-defendants is extraordinary and compelling and thus a worthy ground for relief. Eady also asserts that his rehabilitation efforts justify a sentence reduction. The court addresses each ground in turn.

### A. Disparity in Sentencing Guidelines Ranges

18 U.S.C. § 924(c) imposes a mandatory minimum sentence for using or carrying a firearm in connection with a crime of violence. For a first offense, the statute imposes a five- to ten-year mandatory minimum, depending on the circumstances, and for a subsequent conviction, it imposes a consecutive 25-year mandatory minimum. Before the First Step Act, the law treated separate counts of § 924(c) violations as subsequent convictions, even where the counts were part of the same case. See Deal v. United States, 508 U.S. 129, 132 (1993). Accordingly, the law compelled district courts to "stack" § 924(c) charges within the same case, such that a defendant's first § 924(c) count carried a mandatory minimum sentence of five to ten years and his second carried a mandatory minimum sentence of 25 years. These mandatory minimums, of course, are reflected in a defendant's recommended sentence under the Sentencing Guidelines. The First Step Act ended the practice of stacking by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and "has become final." First Step Act § 403(a), 132 Stat. at 5222. The Fourth Circuit has since confirmed that the 25-year mandatory minimum is "reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single

4

prosecution." United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020). But that change does not apply to sentences—like Eady's—imposed prior to the First Step Act's enactment. See First Step Act § 403(b), 132 Stat. at 5222; Jordan, 952 F.3d at 174.

Eady argues that this change in the § 924(c) sentencing regime constitutes an extraordinary and compelling circumstance justifying a reduction in his sentence. Initially, the government argued that the court could not consider this ground in a motion under § 3582(c)(1)(A) because the relevant policy statements do not designate it as a potentially extraordinary and compelling reason for compassionate release. Because that precise issue was then pending before the Fourth Circuit in McCoy, the court stayed the case. On December 2, 2020, the Fourth Circuit decided McCoy, foreclosing the government's initial theory. There, the court definitively held that the First Step Act's changes to § 3582(c)(1)(A) rendered the once-relevant policy statements inapplicable, meaning that district courts "are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." McCoy, 981 F.3d at 284 (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). The Fourth Circuit went on find that the defendants in McCoy[2] were entitled to compassionate release based on "the severity of [their] § 924(c) sentences and the extent of the disparity between [their] sentences and those provided for under the First Step Act." Id. at 286. But the Fourth Circuit also made clear that defendants convicted under the old § 924(c) sentencing regime do not receive relief as a matter of right: "not all defendants convicted under § 924(c) should receive new sentences;" instead, "courts

---

[2] The Fourth Circuit consolidated multiple appeals in McCoy. 981 F.3d at 274 ("The defendants in these consolidated appeals . . . .").

5

should be empowered to relieve some defendants of those sentences on a case-by-case basis." Id. at 287. The court also offered a firm reminder that compassionate relief is limited "to truly extraordinary and compelling cases," requiring a defendant to satisfy an "exceptionally high standard for relief." Id. at 287–88.

Eady fails to meet that high standard here because there is no disparity between the sentence he actually received and those provided for under the new § 924(c) sentencing regime established by the First Step Act. As the court discussed above, Eady pleaded guilty to four counts for violations of § 924(c) and five counts of Hobbs Act Robbery (or conspiracy to commit Hobbs Act Robbery). The Sentencing Guidelines recommended a sentence of 84–105 months for the Hobbs Act Robbery convictions. Based on the pre-First Step Act practice of stacking, the Sentencing Guidelines further recommended a statutorily mandated sentence of 960 months (or 80 years) for Eady's § 924(c) convictions. Accordingly, Eady's Sentencing Guidelines rage was 1,044–1,065 months. To be sure, Eady's Sentencing Guidelines range, were he sentenced today, would look much different. The Sentencing Guidelines would still recommend a sentence of 84–105 months for Eady's Hobbs Act Robbery convictions, but the statutorily based sentence recommendation for Eady's § 924(c) convictions would fall from 960 months (or 80 years) to 240 months (or 20 years). Together, Eady's convictions would today garner a Sentencing Guidelines recommendation of 324–345 months. But the problem with Eady's argument is that the sentence he actually received is nowhere near his pre-First Step Act Sentencing Guidelines range. Pursuant to a motion for downward departure, the court sentenced Eady to a term of imprisonment of 300 months, 744 months below his actual Sentencing Guidelines range, and 24 months below

6

what his Sentencing Guidelines range would be if he were sentenced today pursuant to the First Step Act's sentencing regime. In other words, unlike the defendants in McCoy, Eady received a sentence in lockstep with current First Step Act law.

In contrast, the circumstances faced by the defendants in McCoy were exceedingly more extraordinary and compelling. Most fundamentally, the defendants there actually received sentences consistent with the mandatory minimums imposed by their § 924(c) charges. The "incredible length" of those sentences "far exceeded that necessary to achieve the ends of justice." McCoy, 981 F.3d at 278. Accordingly, the Fourth Circuit found that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." Id. at 285. There is no comparable "severity" or "enormous disparity" here. While Eady faced a possible sentence Congress has since deemed unjust, he actually received a sentence that Congress now "deems appropriate" based on his convictions. Id. at 279. And the disparity between the sentence Eady received and the one he might receive today similarly lacks any severity. As the court explained above, Eady was sentenced well below what his post-First Step Act Sentence Guidelines range (incorporating his mandatory minimum) would recommend today. The Fourth Circuit held in McCoy, "We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." Id. at 285–286. Put simply, Eady's sentence does not fall within that category.

While perhaps not as fundamental to the inquiry, the Fourth Circuit also noted other circumstances that underscored the extraordinary and compelling nature of the defendants' circumstances in McCoy. For example, the defendants were between the ages of 19 and 24. Id. at 277–78. And each lacked a significant criminal history. Id. In other words, the defendants in McCoy faced decades-long sentences at the outset of their adulthood based on a single case. Those compelling circumstances are also absent here. Eady was 30 years old at the time of his conviction and has a history of engaging in criminal activity. ECF No. 240 ¶¶ 58–70. Therefore, although McCoy authorizes the court to consider Eady's argument for compassionate release, it gives the court no reason to grant relief.

In response, Eady argues that the disparity between the Sentencing Guideline range under which he was sentenced and the one that would be recommended today constitutes an extraordinary and compelling circumstance. Eady explains that the court granted a motion for downward departure that resulted in a sentence 71% lower than the Sentencing Guidelines range. Were the court to impose a similar departure from the post- First Step Act Sentencing Guidelines range, he argues, Eady would receive a sentence of 94 months. This argument is unconvincing. The fact that a lower Sentencing Guidelines range may have altered the downward departure calculus and could have resulted in a lower sentence is not the kind of extraordinary and compelling circumstance § 3582(c)(1)(A) contemplates. To reiterate, the Fourth Circuit in McCoy found compelling the disparity between the defendants' mandatory sentences and the sentences that Congress now deems appropriate. In other words, the compelling circumstance in McCoy was the disparity between sentences, not between Sentencing Guidelines range

calculations. McCoy authorizes the court to consider "that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." Id. at 285–286. Eady is not serving such a sentence, and the fact that the Sentencing Guidelines recommended a severe sentence does not make the sentence he received severe. Accordingly, the court finds that the First Step Act's changes to the § 924(c) sentencing regime do not to create extraordinary and compelling circumstances when applied to Eady.

### B. Disparity in Co-Defendant Sentences

Eady also contends that the disparity between his sentence and those of his co-defendants renders his circumstances extraordinary and compelling. The record makes clear, however, that the disparity in sentences between Eady and his co-defendants accurately reflects the disparate conduct in which each engaged and the distinct convictions each received. As the court explained in an order denying Eady's § 2255 petition, Eady's co-defendants obtained relief and a reduction to their sentences because they were convicted of distinct crimes, one of which the Supreme Court subsequently deemed unconstitutional:

> In October of 2019 and February of 2020, this court granted relief to Eady's co-defendants, Winard Eady ("W. Eady") and Christopher Simmons ("Simmons"). Eady and Simmons each filed § 2255 motions, seeking relief from their conviction under Count 10 of the indictment. Eady is not named in Count 10 of this indictment, and he was not convicted under Count 10. Count 10 charged W. Eady and Simmons with a violation of § 924(c). Unlike the § 924(c) charges alleged against Eady in Counts 3, 5, 7, and 9, Count 10 was predicated upon conspiracy to commit Hobbs Act Robbery, Count 1, as the underlying crime of violence. The indictment makes this clear: Count 10 is based upon "[t]he allegations set forth in Paragraphs 2 through 6 of Count One of this indictment," which charged all defendants with conspiracy to commit Hobbs Act Robbery. Thus, in the case of W. Eady and Simmons, it was clear that their § 924(c) convictions were predicated on conspiracy to commit Hobbs Act Robbery. Because that

> crime falls under the residual clause of § 924(c), it could not support a conviction under Count 10. See Simms, 914 F.3d at 233. Therefore, the court granted W. Eady and Simmons's respective motions and granted them relief.
>
> Eady's § 924(c) convictions are different because each is predicated upon a distinct substantive Hobbs Act Robbery charge. Substantive Hobbs Act Robbery falls within the force clause's definition of crime of violence, and therefore remains a valid predicate offense to a § 924(c) conviction. Mathis, 932 F.3d at 266. As such, Eady, unlike his co-defendants, is not entitled to relief. Eady asks the court to "treat [him] in the same manner" as his co-defendants. ECF No. 354 at 4. However, Eady is not entitled to the relief obtained by his co-defendants because he is convicted of committing a different crime.

ECF No. 355 at 9.

Moreover, the government convincingly explains in its response that even absent the relief W. Eady and Simmons received, Eady's disparate conduct justifies a different sentence. For example, Simmons "pled guilty to far fewer counts[.]" ECF No. 369 at 8. And, perhaps more convincingly, Simmons provided considerably more help to the government in prosecuting the case. The government explains:

> Simmons cooperated immediately in the case, before he had an attorney, and drove around with agents identifying businesses that he and his co-defendants robbed. This allowed investigators to ascertain the full scope of the conspiracy and charge both co-defendants. [ECF] No. 231. In contrast, although Eady was cooperative early on, he recanted what he said in his initial statement, largely voiding its value. He then later cooperated, once he was faced with imminent trial dates. [ECF] No. 234. Although Eady testified against co-defendant W. Eady, his degree of cooperation was significantly less valuable to the government than that of Simmons and did not warrant the same degree of departure.

Id. at 9. W. Eady's circumstances are similarly distinct from Eady's, given that W. Eady was convicted on only two counts. Accordingly, the court finds the disparity between Eady's sentence and the sentences of his co-defendants uncompelling.

### C. Rehabilitation

Finally, Eady asks the court to consider his rehabilitative efforts since his arrest. Specifically, Eady points to his completion of dozens of classes, his nearly clean disciplinary record, and his strong relationships with members of his family. See ECF No. 354 at 10. Eady has also submitted letters from some of those family members that evince a strong support system. See ECF No. 371-1. While Eady's rehabilitative efforts, including his work to strengthen his relationships with family members, are no doubt impressive and commendable, they unfortunately give the court no grounds to grant compassionate relief. See Casey v. United States, 2020 WL 2297184, at *2 (E.D. Va. May 6, 2020) ("[A] petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification."). Accordingly, the court finds that Eady has fallen short of demonstrating that extraordinary and compelling circumstances justify a sentence reduction. In the absence of extraordinary and compelling circumstances, the court need not consider the factors codified in § 3553(a).[3]

---

[3] Moreover, the court's consideration of the sentencing factors confirms that a reduction is not warranted here. As the government notes, Eady's criminal history is significant, having been convicted of grand larceny, possession of drugs with the intent to distribute, and a number of minor charges. See ECF No. 240 ¶¶ 58–70. Further, as the government notes in its response, although he was convicted of only four counts of Hobbs Act Robbery, Eady was directly involved in approximately twenty robberies and conspired in an additional ten. Each of those instances involved the use of a firearm and in each instance victims were held at gunpoint. Therefore, based on his criminal history, the seriousness of his crimes, and the relatively insubstantial portion of his sentence that he has served, a sentence reduction would fail to further the sentencing goals codified in § 3553(a).

## IV.  CONCLUSION

For the foregoing reasons the court **DENIES** the motion for compassionate release.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 9, 2021**
**Charleston, South Carolina**